IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ALFREDO LEON OREA,

    Plaintiff,

  v.

FS SAN FRANCISCO EMPLOYMENT, INC.'S LONG TERM DISABILITY PLAN,

    Defendant.
_____/

LIFE INSURANCE COMPANY OF NORTH AMERICA,

    Real Party in Interest.
_____/

No. C 09-02538 WHA

**ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT, ORDERING ADDITIONAL DISCOVERY, AND SETTING DATE FOR BENCH TRIAL**

**INTRODUCTION**

In this action, plaintiff Alfredo Leon Orea challenges the termination of his long-term disability benefits under the Employee Retirement Income Security Act of 1974, 29 U.S.C. 1132. Defendant FS San Francisco Employment, Inc.'s Long Term Disability Plan ("the Plan") and real party in interest Life Insurance Company of North America ("LINA") move for summary judgment, maintaining that plaintiff is not entitled to long-term disability benefits because he is not "disabled as to any occupation" as required under the operative insurance policy. Plaintiff also moves for summary judgment and asks for an order finding that he is disabled from work in any occupation as defined under the Plan's policy.

Plaintiff was injured while working as a security guard for FS San Francisco Employment. He received disability benefits for two years pursuant to a policy that considered

1  him to be disabled if he was unable to perform the material duties of his own occupation. To
2  receive benefits longer than two years, plaintiff had to be unable to perform *any* occupation for
3  which he was qualified and by which he could earn 60% or more of his indexed earnings.
4  Plaintiff has been examined by numerous doctors who disagree regarding whether plaintiff is
5  able to work with restrictions. Some of the doctors support plaintiff's position that due to the
6  injury to his back and disc protrusion causing severe pain, he is basically unemployable.
7  Others support defendant and real party in interest's position that plaintiff is exaggerating his
8  injuries and is capable of performing a sedentary job. Because the benefit plan does not give
9  the administrator or fiduciary discretionary authority to determine eligibility for benefits or to
10 construe the terms of the plan, the parties agree that a *de novo* standard of review applies.
11 Because there is a genuine issue of material fact regarding these issues, both parties' motions
12 for summary judgment are **DENIED**. A bench trial will be scheduled.

## STATEMENT

Except as noted, the following facts are from the administrative record and citations to bates numbers (with the prefix "LINA") are references thereto. Defendant FS San Francisco's Long Term Disability Plan is an employee benefit plan under ERISA that offers long-term disability benefits to FS San Francisco's employees through an insurance policy issued by LINA, the real party in interest. LINA, a subsidiary of CIGNA Group Insurance, is a claims administrator for benefit claims under the policy and in that capacity makes decisions on claims, makes final decisions on appeals, and administers and pays claims.

Plaintiff was injured while working for FS San Francisco Employment, Inc. as a security guard for the Four Season's Hotel in San Francisco. On January 22, 2006, plaintiff's coworker got into a fight with a homeless person and was stabbed. When plaintiff attempted to intervene, he was thrown to the ground and injured (LINA 00631–62). Plaintiff was taken to the emergency room. He reported lower back pain while there, but x-rays found no bone fractures (LINA 01880).

Plaintiff had previously injured his back in April 2005 while working at Home Depot when a co-worker who was having a seizure fell on top of him (LINA 00146). Plaintiff was

1  able to return to work two weeks after his injury at Home Depot, but his January 2006 injury at
2  the Four Season's aggravated the earlier injury (LINA 01102).

3       Plaintiff was treated for his injury by chiropractor Nathan Morello. Chiropractor
4  Morello sent him for an MRI, where bulging discs were found (LINA 01880). In a report
5  dated January 27, 2006, five days after the accident, Chiropractor Morello determined that
6  plaintiff had injured his middle back, low back and left leg when he was thrown to the ground
7  (LINA 01840). Chiropractor Morello concluded that plaintiff was not able to perform his
8  usual occupation and should be considered "total temporary disabled" until written notice was
9  given from Chiropractor Morello's office (LINA 01842).

10      Following his injury at the Four Season's, plaintiff applied for long-term disability
11  benefits under FS San Francisco's Long Term Disability Plan. Under the "own occupation"
12  disability definition in the plan's group disability insurance policy, for the first 24 months that
13  plaintiff claimed benefits, he was considered disabled if (1) he was unable to perform the
14  material duties of the occupation he was performing at the time the disability began and (2) he
15  was unable to earn 80% or more of his indexed earnings from working his regular occupation.
16  LINA approved his claim under the "own occupation" period of the policy (LINA 00004).

17      Chiropractor Morello continued to treat plaintiff throughout 2006 and 2007. In June
18  2006, he concluded that plaintiff remained physically unable to perform his regular work
19  responsibilities as a result of his injury (LINA 01438). On a "patient disability status" form,
20  Chiropractor Morello did not check the box indicating that plaintiff could return to work with
21  modified duties, although he did check a box labeled "limited to light office/semi-sedintary
22  [sic] duty." In November 2006, he wrote that plaintiff could not lift more than 20 to 25
23  pounds, could not perform repetitive bending or stooping, and could not do prolonged standing
24  (LINA 01452).

25      In December 2006, Chiropractor Morello diagnosed plaintiff with an injured back,
26  specifically "thoracic and lumbosacral sprain/strain with associated lumbosacral IVD
27  displacement without myelopathy and lumbosacral radiculitis/neuritis" (LINA 01717). This
28  meant a disc had moved from between plaintiff's vertebral bones or was bulging out and

3

1  compressing a nerve, causing him pain. Chiropractor Morello wrote on a disability request
2  claim at that time that plaintiff could not return to work because he was unable to bend, stoop,
3  kneel, crawl, or carry or lift objects greater than 25 pounds. He further stated that he had
4  placed the following specific restrictions on his patient: "No lifting/carrying greater than 25
5  lbs., no repetitive bending, stooping, squatting, kneeling or prolonged standing" (LINA
6  01717). In answer to the question "Could your patient return to work at this time if
7  accommodations were made for the listed restrictions?", Chiropractor Morello checked a box
8  labeled "no."

9        On July 20, 2007, Chiropractor Morello completed another patient disability-status
10 form for plaintiff (LINA 01465). He stated that plaintiff remained physically unable to
11 perform his regular work as a result of his injury, that plaintiff could not lift more than 15 to 20
12 pounds, could not perform repetitive bending or stooping, and could not do prolonged
13 standing. This time, he did *not* check the box which would have indicated that plaintiff could
14 worked performing light office/semi-sedentary duty. On subsequent forms, completed
15 monthly through February 2008, he continued to diagnose plaintiff as unable to perform his
16 regular work responsibilities as a result of his injury (LINA 01466–72).

17       Plaintiff was also treated by orthopedic surgeon Fred Naraghi. In November 2007,
18 Surgeon Naraghi wrote that plaintiff's "condition ha[d] deteriorated" (LINA 01657–58).
19 Plaintiff was diagnosed with worsening neck pain, back pain and mid-thoracic pain, as well as
20 "numbness in the upper extremity and lower extremity consistent with radiculopathy" (LINA
21 01658). Surgeon Naraghi stated that plaintiff could walk, sit and stand for "less than 10
22 minutes at a time." He stated that plaintiff was unable to perform lifting and that his sleep,
23 social and sexual activities were "severely limited due to pain." Surgeon Naraghi provided
24 several medications to plaintiff, which were ineffective in correcting plaintiff's pain (LINA
25 343–45). He wrote that plaintiff was a surgical candidate for a "decompression-type
26 procedure" on his spine to correct disc protrusion (LINA 01659). Plaintiff never had this
27 surgery, however, because it was denied by his medical insurer (LINA 00064).
28

4

Plaintiff was also treated by Chiropractor Jeremy Rhodes-Jones at the Rhodes Jacobs Chiropractic Corporation (LINA 1004–08). In July 2008, LINA sent Chiropractor Rhodes-Jones a letter (mis-addressed to "Dr. Rhodes-Jacobs") asking, *inter alia*, "Are you restricting [plaintiff's] ability to perform sedentary work?" Chiropractor Rhodes-Jones answered, "Yes" (LINA 00736).

Plaintiff was additionally treated by the Mental Health Service at the San Francisco Veterans Affairs Medical Center for depression, anxiety and insomnia "related to chronic neck and back pain from an accident at work several years ago, and the resultant effects the accident has had on his life" (LINA 01248). He was prescribed medication for his symptoms and also attended cognitive behavioral group therapy for depression and anxiety.

Plaintiff also received physical therapy from the VA, and physical therapists' notes from May to July 2008 are included in the administrative record in this matter (LINA 01308–33). The records indicate that plaintiff reported that he continued to suffer from chronic, debilitating pain during that period. On June 23, 2008, for example, the physical therapist noted that plaintiff had started new exercises which had caused him "terrible pain" and that plaintiff then stopped doing the exercises (LINA 01325). On July 15, 2008, plaintiff complained to the physical therapist of "pain with 'everything'" (LINA 01324).

In July 2008, after LINA paid 24 months of benefits, it advised him that a more stringent definition of disability would now apply to him. Under the "any occupation" disability definition in the group disability insurance policy, after benefits were payable for 24 months, an employee was considered disabled if he was (1) unable to perform the material duties of *any* occupation for which he was, or may have reasonably become qualified based on education, training or experience and (2) unable to earn 60% or more of his indexed earnings. Benefits were payable thereafter to age 65 for continuing disability from any occupation (LINA 00004). LINA notified plaintiff that would begin investigating whether he was disabled from any occupation as required under the policy. In the meantime, LINA continued to pay plaintiff's benefits.

5

1    LINA had plaintiff undergo an independent medical examination with yet another

2 doctor, neurosurgeon Stephen Dell in September 2008.  Neurosurgeon Dell provided a report

3 based on his examination and review of plaintiff's medical records dated September 25, 2008

4 (LINA 00675–90).  Neurosurgeon Dell concluded that plaintiff had no limitations with regard

5 to sitting (LINA 00689).  He concluded that plaintiff could stand, walk and reach at desk level

6 between 2.5 and 5.5 hours per day.  He also concluded that plaintiff could push and pull 25

7 pounds, and balance.  Neurosurgeon Dell concluded that plaintiff could "perform full-time

8 sedentary work according to Department of Labor" (LINA 00687).

9    LINA also had plaintiff complete a disability questionnaire (LINA 00729–32).  Plaintiff

10 reported that he had a college bachelor's degree in liberal arts (LINA 00731).  He stated that he

11 could not work in any occupation because he was "awaiting cervical, thoracic and lumbar

12 surgery."  He reported that due to pain he was unable to engage in cooking, cleaning, laundry,

13 yard work, gardening, walking or reading, and his regular activity was limited to two hours a

14 week of shopping and watching television (LINA 00729).

15    LINA determined that plaintiff did not satisfy the more stringent definition of

16 disability.  It determined that plaintiff was capable of performing light work including exerting

17 up to 20 pounds of force occasionally and/or up to 10 pounds of force frequently and/or a

18 negligible amount of force two-thirds or more of the time to move objects.  LINA's vocational

19 department determined that plaintiff could perform the following occupations within his work

20 capacity and earn 60% or more of his indexed earnings: (1) expediter, (2) gate guard, (3)

21 receiver-dispatcher, (4) registration clerk, (5) salesperson, general merchandise, and (6) service

22 clerk.  Based on this determination, payment of benefits to plaintiff were terminated on

23 October 23, 2008 (LINA 00192–94).

24    Plaintiff filed an administrative appeal of the denial of his claim on October 29, 2008.

25 Pursuant to its investigation of plaintiff's appeal, LINA had another doctor, Clayton Cowl,

26 who is board-certified in internal medicine and preventive/occupational medicine, perform a

27 peer review of all the medical evidence in the administrative record (LINA 01223–26).

28 Internist Cowl wrote that he spoke with Chiropractor Jones as part of his review and that "Dr.

Jones, when queried, agreed that the claimant would likely be able to do sedentary work with specific work restrictions" (LINA 01225).

Internist Cowl also wrote in his report that he spoke to Surgeon Naraghi, who remained "very convinced" that the surgery which plaintiff's insurer had refused to cover was "needed in order to advance the patient's functional capacity." Internist Cowl wrote that while Surgeon Naraghi agreed that plaintiff "theoretically might be able to perform seated work with no lifting of more than about 10 pounds and minimal, if any, bending or stooping," the "psychosocial issues currently involved in the case due to depression and anxiety would likely prevent a return to gainful employment" (LINA 01225). Internist Cowl concluded that plaintiff was not precluded from any gainful occupation.

On appeal, LINA also had Psychiatrist Michael Rater, board-certified in psychiatry, conduct a psychiatric peer review of plaintiff (LINA 00631–36). After reviewing plaintiff's file, Psychiatrist Rater concluded that psychiatric restrictions and limitations were not supported by documentation in the claim file. He stated that there was a lack of mental health records to support any psychiatric restrictions and limitations on plaintiff's ability to work. He noted that plaintiff did not require hospitalization or intense mental health services and was able to remain living independently with cognitive, social and emotional abilities consistent with being functional.

LINA upheld its original denial of plaintiff's claim on January 20, 2009 (LINA 00334–36). Plaintiff subsequently filed this action.

**ANALYSIS**

**1. LINA AND THE PLAN'S MOTION FOR SUMMARY JUDGMENT.**

The policy at issue is a long-term disability benefits policy governed by ERISA. In *Firestone Tire & Rubber Co. v. Bruch*, the Supreme Court held that a challenge to the denial of benefits under an ERISA plan is reviewed de novo "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." 489 U.S. 101, 115 (1989). Here, the parties agree that no such discretionary provision exists in the policy and thus the de novo standard of review applies.

7

Under the de novo review standard, there must be a determination whether plaintiff is entitled to benefits under the terms of the policy without deference to either party's interpretation. *Id*. at 112. "If de novo review applies, no further preliminary analytical steps are required. The court simply proceeds to evaluate whether the plan administrator correctly or incorrectly denied benefits" *Abatie v. Alta Health & Life Insurance Co.* 458 F.3d 955, 963 (9th Cir. 2006).

Summary judgment is granted under Rule 56 when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." A district court must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there is any genuine issue of material fact. *Giles v. General Motors Acceptance Corp.*, 494 F.3d 865, 872 (9th Cir. 2007). A genuine issue of fact is one that could reasonably be resolved, based on the factual record, in favor of either party. A dispute is "material" only if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

In considering a motion for summary judgment, the district court must decide whether there are genuine issues of material fact, not whether there was a substantial or ample evidence to support the plan administrator's decision. If the plan administrator has left contested facts unresolved, the district court's review under Rule 56(c) should be limited to determining whether any of the facts in dispute are material. *Mongeluzo v. Baxter Travenol Long Term Ability Benefit Plan*, 46 F.3d 938, 942 (9th Cir. 1995).

The Plan and LINA argue that they should be granted summary judgment because they claim the evidence is undisputed that plaintiff is not disabled under the "any occupation" definition in the policy. However, their argument is premised on a misreading of the evidence in the administrative record. They state, for example, that "[i]t is clear that" on a December 2006 medical report form, Chiropractor Morello concluded that plaintiff can work with certain restrictions such as no lifting heavy weights, repetitive bending or prolonged standing (Br. at 13). In fact, as noted above, Chiropractor Morello explicitly wrote on that form that plaintiff

8

could *not* return to work at that time if accommodations were made for those restrictions (LINA 01717). Why counsel portrayed the record in this way is a mystery.

The Plan and LINA also argue that the opinions of Surgeon Naraghi are "consistent with the other opinions in the administrative record that plaintiff's physical limitations do not prevent him from performing sedentary work" based on his supposed statement to Internist Cowl recorded in Internist Cowl's report that plaintiff "theoretically might be able to perform seated work with no lifting of more than about 10 pounds and minimal, if any, bending or stooping." Even Neurosurgeon, however, noted that Surgeon Naraghi ultimately concluded that plaintiff likely could *not* return to gainful employment (LINA 01225).

Furthermore, plaintiff has raised a serious question in his opposition and cross-motion about the reliability of Internist Cowl's report. Internist Cowl stated, as noted above, that Chiropractor Jones told him that plaintiff would likely be able to do sedentary work with reasonable work restrictions (LINA 01225). In support of his opposition to the motion for summary judgment, plaintiff has submitted several items of extrinsic evidence including a sworn declaration from Chiropractor Jones that was not part of the administrative record. Chiropractor Jones declared, "I disagree with Dr. Cowl's interpretation of my comments about Mr. Orea's ability to work. I did not tell Dr. Cowl that Mr. Orea 'would likely be able to do sedentary work,' nor do I believe that any such suggestion could have been reasonably inferred from my conversation with Dr. Cowl" (Jones Decl. ¶ 4). Chiropractor Jones continued that he has consistently held the opinion "that even with workplace accommodations and restrictions, Mr. Orea is unable to work on a regular and continuous basis in any occupation, sedentary or otherwise, because of his chronic pain," made worse by his depression and anxiety due to the pain (Jones Decl. ¶ 5).

The Plan and LINA argue that Chiropractor Jones's declaration should not be considered. Generally, "[w]here there was a sufficiently developed record before the plan administrator the court should not review documents not submitted to the plan administrator prior to its decision." *Mongeluzo*, 46 F.3d at 943. A primary goal of ERISA is to provide a method for workers and beneficiaries to resolve disputes over benefits inexpensively and

9

United States District Court
For the Northern District of California

1  expeditiously. *Taft v. Equitable Life Assurance Society*, 9 F.3d 1469 (9th Cir. 1993),
2  *abrogated on other grounds*. Allowing additional discovery and evidence extrinsic to the
3  administrative record generally contravenes this goal. Nevertheless, the Ninth Circuit held in
4  *Mongeluzo* that new evidence may be considered under certain circumstances in the discretion
5  of the district court "under certain circumstances to enable the full exercise of informed and
6  independent judgment." The Ninth Circuit concluded that "[t]he district court should exercise
7  its discretion, however, only when circumstances clearly establish that additional evidence is
8  necessary to conduct an adequate de novo review of the benefit decision." *Mongeluzo* at
9  943–44.

10  Here, Chiropractor Jones's sworn declaration indicated that Internist Cowl, employed
11  here by the administrator, misrepresented his views and then relied on that misrepresentation to
12  recommend denying plaintiff's administrative appeal. This raises a concern about the
13  adequacy of the administrative record due to potential evidence of bias on the part of the plan
14  administrator and its peer reviewer, beyond the mere fact that the administrator is also the
15  payor should plaintiff be entitled to benefits. This is sufficient justification under *Mongeluzo*
16  to consider Chiropractor Jones's sworn declaration.

17  These issues alone are sufficient to preclude summary judgment for the Plan and LINA
18  based on the administrative record. The administrative record does not unequivocally support
19  their position that plaintiff was not precluded from any gainful employment. As described at
20  length above, plaintiff was examined by numerous medical professionals and their reports and
21  interpretations of those reports are ambiguous and conflicting about whether plaintiff is
22  precluded from any gainful employment. Accordingly, the Plan and LINA's motion for
23  summary judgment is **DENIED**. For the same reasons, plaintiff's motion for summary
24  judgment must also be **DENIED**.

25  **2.    ADDITIONAL DISCOVERY AND EVIDENCE.**

26  LINA and the Plan argue that if the administrative record is inadequate, the proper
27  procedure is for the Court to determine what additional information is necessary to perform an
28  adequate *de novo* review and then order the parties to provide that information. They point to

10

*Walker v. American Home Shield (LTD) Plan*, 180 F.3d 1065, 1068 (9th Cir. 1999), in which the district court found that the medical evidence in the administrative record was not "particularly clear" and therefore appointed an independent medical expert to prepare a report that was considered by the District Court in making its decision. They argue that this procedure of limited additional information is consistent with ERISA's mandate to resolve disputes over benefits inexpensively and expeditiously. However, *Walker* does not mandate the appointment of an independent medical expert or the limitation on additional discovery to that ordered by the Court.

Plaintiff argues that he requires several specific items of additional discovery. The administrative record contains the insurance policy but none of the other plan documents. Plaintiff seeks the summary plan description and the plan itself, and argues that they are necessary to determine whether they contradict any of the provisions of the insurance policy.

Plaintiff also seeks the claims manual with LINA's guidelines for claims administration at the time plaintiff's claim was administered. According to the sworn declaration of Annie Hong, a senior operations representative for LINA, the claims manual provides internal guidelines for claim handling in general and is not specific to any plan. It is available to those in LINA's claim department for reference purposes. Ms. Hong states that "[u]pon information and belief, it is my understanding that none of the individuals involved in the handling of plaintiff's claim relied on or referred to the claims manual maintained by LINA in making the decision on Plaintiff's claim" (Hong Decl. ¶¶ 7–8). However, she does not state the specific basis for this understanding.

Plaintiff additionally requests the depositions of Neurosurgeon Dell, representatives of MES and LINA regarding how Neurosurgeon Dell was selected by LINA to evaluate plaintiff's case. The administrative record reveals that, although he was licensed to practice medicine in California at the time he examined plaintiff, Neurosurgeon Dell had his medical license revoked in 1993 in Massachusetts, New Hampshire and Vermont for misrepresentations including misrepresentations on his application for a license to practice

11

medicine, misrepresentations on his application for appointment to the medical staff of a hospital, and misrepresentations upon medical records and to a patient (LINA 01173–1214).

Plaintiff also seeks paper discovery and the deposition of an adjuster and corporate representative of LINA regarding how LINA assesses pain-based disability. Finally, plaintiff seeks to submit evidence regarding the Social Security Administration's determination regarding whether he is disabled.

Plaintiff's additional discovery requests to obtain the summary plan description, the plan itself and the claims manual are **GRANTED**. These materials must be produced by defendants no later than **MARCH 29, 2010.** Plaintiff's request to take the deposition of Neurosurgeon Dell — and to take the depositions of one representative of MES and one representative of LINA regarding how Dr. Dell was selected by LINA to evaluate plaintiff's case — is **GRANTED**. These depositions must be completed no later than **MARCH 29, 2010.** This discovery will be helpful in determining the basis for plaintiff's claims.

Additional evidence that the parties submit regarding the Social Security Administration's determination of plaintiff's disability shall be considered at trial. The other additional discovery that plaintiff seeks is **DENIED** on the grounds that it is unnecessary to resolving the determinative issue of whether he is precluded from any gainful employment on account of his injuries.

In light of the conflicting record, a bench trial will be necessary to resolve this matter. No trial date has yet been scheduled. Accordingly, this order hereby sets the trial date for **APRIL 26, 2010, AT 7:30 A.M.** A final pretrial conference shall be held on **APRIL 19, 2010, AT 2:00 P.M.** Please also read the Court's standing order on bench trials.

**IT IS SO ORDERED.**

Dated: March 8, 2010.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE